# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| UNITED SUPREME COUNCIL, 33 DEGREE OF THE ANCIENT AND ACCEPTED SCOTTISH RITE OF FREEMASONRY, PRINCE HALL AFFILIATION, SOUTHERN JURISDICTION OF THE UNITED STATES OF AMERICA, et al., | ) ) ) ) ) ) ) ) | Civil No. 1:16-cv-1103 |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) | |
| UNITED SUPREME COUNCIL OF THE ANCIENT ACCEPTED SCOTTISH RITE FOR THE 33 DEGREE OF FREEMASONRY, SOUTHERN JURISDICTION, PRINCE HALL AFFILIATED, *et al.*, | ) ) ) ) ) ) ) | |
| *Defendants.* | ) ) ) ) | |

## MEMORANDUM OPINION

Plaintiffs United Supreme Council, 33 Degree of the Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, Southern Jurisdiction of the United States ("USC-SJ Tennessee" or "USC-SJ I") and its Washington DC-based predecessor (USC-SJ Predecessor) have brought suit against Defendants United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, Southern Jurisdiction, Prince Hall Affiliated (USC-SJ II), Ralph Slaughter, Joseph Williams, the Most Worshipful Prince Hall Grand Lodge of Virginia, Free and Accepted Masons, Incorporated ("Grand Lodge"), Roger Brown, and Michael Parris. After a hearing and a full round of briefing, Plaintiffs' original complaint was dismissed without

1

prejudice on December 2, 2016 (Dkt. No. 43). The First Amended Complaint was filed on January 3, 2017.

The Defendants are grouped into two categories and have filed two separate motions to dismiss. The first motion to dismiss (Dkt. No. 48) was filed by Defendants Roger Brown and the Grand Lodge ("Grand Lodge Defendants"). The second motion to dismiss (Dkt. No. 53) was filed by the other three Defendants: USC-SJ II, Parris, Slaughter, and Williams (USC-SJ II Defendants). After reviewing the briefing, and for the reasons that follow, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss. Specifically, the motions are **DENIED** with respect to Count I (unfair competition); Count II (conspiracy to commit unfair competition); Count V (tortious interference); Count VI (conspiracy to commit tortious interference); Count IX (copyright infringement); and Count X (trademark infringement). The Motion is hereby **GRANTED** in all other respects.

## I. BACKGROUND

A.   <u>**Masonic History**</u>

USC-SJ Tennessee or its predecessors in interest have operated as Ancient Accepted Scottish Rite of Freemasonry organizations since 1854. The immediate predecessor in interest to USC-SJ Tennessee was the USC of the Sovereign Grand Inspectors General of the Thirty-Third and Last Degree of the Ancient and Accepted Scottish Rite of Freemasonry for the Southern Jurisdiction of the United States (USC Predecessor), which was incorporated in 1920 under the laws of the District of Columbia. USC Predecessor amended its name in 1964, and it remains a corporation in good standing in D.C. USC-SJ Tennessee and USC Predecessor are plaintiffs in this action.

In 1880, there were five Supreme Councils of the Prince Hall Ancient and Accepted Scottish Rite Masons in existence.  In 1881, the Councils convened and adopted a plan by which they merged into two jurisdictions; the New York and Philadelphia councils merged into the Supreme Council for the "Northern Jurisdiction" and the Baltimore and Washington, D.C. Councils formed the Supreme Council for the "Southern Jurisdiction," which included Virginia. When a Council has a state "within its jurisdiction," Plaintiffs allege that the Council "ha[s] the right to establish its Bodies within the extension of that State's jurisdictional limits and have exclusive jurisdiction thereof."  Under this compact, the existing territories were divided between the two Supreme Councils, with any open territories declared "open territory" that was subject to invasion by any Prince Hall Affiliated Masonic Jurisdiction of the symbolic or first three degrees. [1]

The precise hierarchy of the Prince Hall Freemasons is not clear from the Complaint.  As is relevant for the purposes of this motion, USC-SJ I maintains that it has "exclusive authority within [the Southern Jurisdiction] to form, charter and administer unincorporated 'Subordinate Bodies' including, but [sic] limited to, the exclusive authority to confer the Fourth Degree ('Secret Master') through the Thirty Third and Last Degree" ("Grand Inspector General") of Masonry.[2]

## B.    Defendants' Actions

The Amended Complaint essentially alleges six acts that support its claims for relief. The first alleged wrongful act came on the tails of an attempted coup that occurred on October 10,

---

[1] Plaintiff claims that its "current territorial jurisdictions include the following states and territories: Alabama, Arizona, Arkansas, California, District of Columbia, England, Florida, Georgia, Kentucky, Korea, Louisiana, Maryland, Mississippi, Missouri, Nevada, West Virginia, Western Europe, Republic of Liberia, Hawaiian Islands, the Philippine Islands, and 'such other areas as USC-SJ Tennessee may ordain." Compl. ¶ 33.

[2] The first three degrees are: "'Entered Apprentice,' or the 'First Degree'; 'Fellow Craft' or 'Second Degree'; and 'Master Mason,' or 'Third Degree' of masonry." Compl. ¶ 15.

3

2015 at an annual meeting of Plaintiff USC-SJ Tennessee. At that meeting, Defendants

Slaughter and Williams, along with non-party Alvin Wilkins, Sr., attempted to gain control of

USC-SJ Tennessee by voting to replace the existing "Sovereign Grand Commander Deary

Vaughn." This attempt was unsuccessful, and on October 16, 2015, six days after their coup

failed, Slaughter, Williams, and Wilkins incorporated USC-SJ II under the name "United

Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry,

Southern Jurisdiction, Prince Hall Affiliated." Plaintiffs allege that this name "is the same if not

substantially and significantly similar, to the name of Plaintiff [USC-SJ I]." Plaintiffs further

allege that the name was chosen "for the sole and exclusive purpose of trading upon, usurping,

fiscally capitalizing upon and converting the goodwill, historicity, character and reputation of

Plaintiffs."

Second, after establishing the new organization, Defendants began meeting to discuss the

"implementation of Defendant's takeover of Plaintiffs' Virginia operations." These meetings

took place during the time period of November 6-20, 2015. In particular, on November 6, Parris

met with Brown and non-party Larry D. Christian, who was "an influential former CEO/Grand

Master of the Grand Lodge." The meeting was took place during an "official, ceremonial

business meeting of Plaintiffs' subordinate body in Richmond, VA, known as Richmond

Consistory No. 22A." The meeting was "conducted under Plaintiffs' Constitution and utilize[ed]

Plaintiffs' Trademarks and other assets." At this meeting, Parris, Slaughter and Williams lead a

discussion regarding their plan to "takeover Plaintiffs Virginia operations by usurping Plaintiffs'

name, Trademarks, Copyrighted Material, financial accounts and other assets . . ." Allegedly,

Brown "endorsed this concept [and took] the essence of the scheme back to the officers of [the

Grand Lodge]." These meetings culminated in Parris formally appearing before the officers of

4

the Grand Lodge in Roanoake on November 21, 2015. At this meeting, Parris requested fraternal recognition for USC-SJ II.

Third, Defendants induced members to switch allegiances. For example, shortly after the *coup*, Defendant Parris (who was then Plaintiffs' Deputy of the Orient of Virginia) "defected to and joined Defendants" in their new order. On November 29, 2015, Defendant Parris then published a "Letter of Dispensation" on Plaintiffs' letterhead that encouraged Plaintiffs' members and its Subordinate Bodies to abandon Plaintiffs in lieu of Defendant USC-SJ II. In this letter, Parris stated that an "overwhelming majority" of Plaintiffs' members voted to join Defendant USC-SJ II. According to the complaint, there was no such vote, and "Plaintiffs' Constitution . . . did not allow the taking of any such vote regarding the grant of loyalty to a competing United Supreme Council." Indeed, by the terms of the Constitution, "Plaintiffs' members vow to maintain their loyalty to no United Supreme Council other than Plaintiffs within the Southern Jurisdiction." These activities continued until around March 4, 2016, and consisted of Defendants Parris and/or Brown meeting with Plaintiffs' Subordinate Bodies and advising them to withdraw from USC-SJ I. Under the terms of Plaintiffs' Constitution, "all papers, rituals, monies, rules regulations [sic], assets, and other real or personal property must be returned to Plaintiffs" upon the dissolution of any subordinate body.

Fourth, Plaintiffs allege that Defendants have attempted to take control of "certain financial banking accounts owned and controlled by [Plaintiffs]". As an example, Plaintiffs recite that, in Louisiana, one of USC-SJ Tennessee's subsidiary organizations, the Pelican Council on Deliberation (the "PCOD"), is involved in a legal challenge regarding its bank account at First NBC Bank. The account, which includes a total sum of approximately

5

$27,446.26, is currently the subject of a judicial proceeding in Louisiana.[3]  In addition,

Defendants, through their agents Charles V. Hargrave Jr. and Ernest Hardy, Jr., attempted to

"invade and/or usurp three (3) banking accounts or securities owned by Plaintiffs, or their

Subordinate Body – Alpha & Omega Consistory #9, and kept by the Wells Fargo Bank, Church

and High Street, Portsmouth, VA." As a result, on May 16, 2016, Wells Fargo restricted access

to the assets because it had "received conflicting information regarding individuals authorized to

transact on the business accounts."  In addition, "agents (indicated as account signors) of

Defendant USC-SJ II have successfully misappropriated" seven separate accounts belonging to

Plaintiffs' subordinate bodies.  The Amended Complaint alleges that the amount of money

misappropriated by Defendants' "conspiracy . . . exceeds $100,000."

Fifth, as evidence of the conspiracy, Plaintiffs point to a published letter from Roger

Brown to Ralph Slaughter on March 3, 2016.  This letter granted fraternal recognition of Plaintiff

USC-SJ II.  Grand Lodge Defs' Mem. in Supp., Ex. A at 1 (Dkt. No. 49-1).  It reads:

> This Fraternal recognition is being granted to the New and Progressive United
> Supreme Council in DC because it is the right decision for this Jurisdiction.  And,
> because of an extreme desire to continually promote peace, harmony and love
> among the Craft in the Jurisdiction of Virginia.  Please also be aware that we have
> not removed fraternal recognition from [USC-SJ Tennessee].

*Id.* (emphasis in original).  Defendant Brown also issued oral proclamations with similar effect.

Finally, on March 18, 2016, Defendants held a "council of Deliberation annual meeting"

in Richmond, Virginia.  This event was titled the "Ninety-First Annual Session, Virginia Council

on Deliberation A.A.S.R. for the Thirty-Third Degree of Freemasonry Southern Jurisdiction,

Prince Hall Affiliated," even though USC-SJ DC had only been incorporated for less than one

---

[3] *See First NBC Bank v. Pelican Council of Deliberation, et al.*, 24th Judicial District Ct. Parish of Jefferson, LA,
Case No. 758920, (Mar. 16, 2016).

year. By meetings like this, Defendants were able to misappropriate Plaintiffs' "funds, revenue, name, numbers, assets, rituals, and other personalty without Plaintiffs' authorization or consent."

In addition to these acts, Plaintiffs assert ownership of three federally-protected copyrights and trademarks. Specifically, Plaintiffs are the owners of federal trademark application No. 86841790, filed on December 8, 2015, titled "United Supreme Council Ancient & Accepted Scottish Rite of Freemasonry Prince Hall Affiliation Southern Jurisdiction." Prior to the formal application, Plaintiffs had used the trademark continuously and without interruption since 1964. They also own federal trademark application No. 86936462, filed on March 10, 2016, and titled "Order of the Golden Circles." Finally, they own U.S. Copyright Registration No. TX0008-210-759, titled "Constitution & General Regulations of the United Supreme Council, 33° Ancient & Accepted Scottish Rite of Freemasonry, PHA, SJ, USA, Inc." The effective date of registration for Plaintiffs' Constitution is November 16, 2015.

### C.    Causes of Action

Following these factual recitations, Plaintiffs' Amended Complaint alleges the following 10 counts against Defendants: (1) Unfair Competition; (2) Conspiracy to Commit Unfair Competition; (3) Fraud; (4) Conspiracy to Commit Fraud; (5) Tortious Interference with Contract; (6) Conspiracy to Commit Tortious Interference with Contract; (7) Conversion – Banking Accounts/Securities Held by Federally Chartered Financial Institution; (8) Conversion – Other Personalty; (9) Copyright Infringement; and (10) Trademark Infringement.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, the Plaintiff must allege enough allegations of fact "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In this regard, bald legal assertions without factual support need not be

accepted. *Id.* Indeed, the Court may not rely on mere "labels and conclusions" or the Complaint's "formulaic recitation of the elements of a given cause of action. *Id.* at 555.

In considering a motion to dismiss, the court accepts as true all of the factual allegations contained in the complaint, construing them in the light most favorable to the plaintiff. *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). "To survive dismissal, the complaint must contain enough facts to state a claim to relief that is plausible on its face." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (internal quotation marks omitted).

## III. DISCUSSION

Upon consideration of the parties' briefing, and for good cause shown, the Court finds that Plaintiffs have failed to state a claim for relief with regard to Count III (Fraud), Count IV (Conspiracy to Commit Fraud), and Counts VII and VIII (Conversion of Bank Accounts and Personalty). Therefore, these claims are hereby **DISMISSED** with prejudice. The motion to dismiss will be **DENIED** with respect to the remaining claims.

### A.   Conspiracy Claims

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 402 (1985). Conspiracies require some overt act in furtherance of the conspiracy, but "there can be no conspiracy to do an act which the law allows." *Id.* Accordingly, in order to state a claim for a civil conspiracy, Plaintiffs must establish that an underlying tort has been committed. *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 216 (2014).

8

In this case, Plaintiffs have failed to state a claim for relief on their underlying fraud claim. Therefore, the related claim for a conspiracy to commit fraud must necessarily be dismissed as well. For the remaining conspiracy claims, Plaintiffs have pleaded sufficient facts to establish a claim for relief.

### B.    Fraud

Plaintiffs' fraud claim has no merit. In arguing that the Amended Complaint alleges "fraud in the factum," Plaintiffs rely heavily on a passage from a 1940 case involving a dispute between two Elks Lodges. *Grand Lodge Improved, B.P.O.E. of the World, v. Eureka Lodge No. 5, Indep. Elks*, 114 F.2d 46, 47 (4th Cir. 1940) ("*Independent Elks II*"). The excerpt they quote reads: "to adopt the name of the original order or to hold themselves out as a branch of that order . . . constitutes a fraud upon the original order and upon the public." *Independent Elks II*, 114 F.2d at 47. Despite this language, however, the Independent Elks cases did not address the legal issue of fraud. Indeed, those cases resolved equitable claims for injunctive relief only. There was no discussion of the legal claims for damages, and therefore this quotation (as well as the Independent Elks cases) is neither binding nor persuasive for this Court's fraud analysis.

In examining the legal elements of fraud, it is evident that this claim must fail. In Virginia, fraud requires: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218 (2005).

It is not clear that Plaintiffs' claims meet any of these elements, but their deficiency is most apparent in examining the "reliance" prong of the fraud analysis. In this case, any purported "false representation" would revolve around Defendants' declaration that USC-SJ II is

9

a "legitimate" United Supreme Council. Even assuming this is a material and demonstrably false representation, there is no plausible argument that Plaintiffs relied on this statement.

Principally, if Plaintiffs enjoy exclusive authority over the Southern Jurisdiction (as they claim), then they would be well aware that any assertion of overlapping or competing authority was false. Assuming Plaintiffs' claims of authority are valid, any contrary assertions would have been immediately identifiable as false. As specific evidence, Plaintiffs allege that they were aware of Defendants' false claims and demanded that they cease the unauthorized use of their intellectual property. Am. Compl. ¶ 62. These demands presume that Plaintiffs knew Defendants' claims were false. Upon conceding this fact, Plaintiffs cannot now turn around to claim that they were fooled by the statements.

Put simply, Plaintiffs do not allege at any point that they believed in the legitimacy of USC-SJ II, and therefore they could not have reasonably relied on Defendants' assertions of authority. Moreover, even if they did believe these assertions, they have not alleged any action that they took as a result of the false representations. As such, there are no allegations that Plaintiffs had reason to be misled by the identity of USC-SJ II's new corporate entity. Plaintiffs' knowledge that Defendants' claims of authority were false belies any reliance on those statements and dooms their fraud claims.[4]

## C.   Conversion Claims

There are two conversion claims in the Amended Complaint: (1) conversion/theft of banking accounts/securities and (2) conversion/theft of other personalty. Neither of these claims can survive the motion to dismiss.

---

[4] It is possible that individual members of USC-SJ I relied upon Defendants' statements, but Plaintiffs do not have standing to bring those claims.

In Virginia, "[c]onversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights. *Economopoulos v. Kolaitis*, 259 Va. 806, 814 (2000). Thus, in order to state a claim for conversion, plaintiffs must show that they were "entitled to the immediate possession of the item alleged to have been wrongfully converted." *Id.*

Plaintiffs' first conversion claim focuses on the bank accounts of its subordinate bodies. Am. Compl. ¶ 141. They assert that the subordinate bodies were "commissioned and chartered by, and under the exclusive jurisdiction, dominion, and control of, Plaintiffs . . . in accordance with the USC-SJ Constitution." *Id.* Thus, they do not allege that any of these bank accounts were in their name, but instead assert that, under their Constitution, USC-SJ "shall have custody of the property, real and personal, of a Subordinate Body . . . and shall administer and/or dispose of same as it sees fit." Am. Compl. ¶ 45 (citing Plaintiffs' Constitution, Art. XXXVIII, § 23). In other words, they recite the terms of their own Constitution for the proposition that they were entitled to possession of another entity's property.

These allegations do not establish a legal ownership interest in the bank accounts. This Court does not sit to enforce the Freemasons' Constitution as though it were law, and Plaintiffs cannot point to anything besides their Constitution which would suggest they had a legal right to invade the accounts of their subordinate bodies. Unlike the "oath of fealty" that provides a factual basis for establishing a contract between Plaintiffs and their members, Plaintiffs do not allege a separate contract with the subordinate bodies in their Amended Complaint. There is no offer, acceptance, or supporting history of how these subordinate bodies were created. As far as the Amended Complaint is concerned, these entities are independent organizations with

independent bank accounts. Plaintiffs' bare assertions of "authority" and "exclusive jurisdiction" under their Constitution are simply without legal support.

Moreover, Plaintiffs have not alleged that any of the Defendants actually took control of these accounts. The names of the real signors on these accounts are all listed in the complaint, and yet none of them are Defendants here. Instead, Plaintiffs try to draw the connection by affixing the label of "agent" on the signors on these accounts. There are no facts to support this assertion. *See Murphy v. Holiday Inns, Inc.*, 216 Va. 490, 492 (1975) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.") (quoting Restatement (Second) of Agency § 1)). As such, Plaintiffs' allegations do not show that Defendants themselves interfered with the ownership rights of the bank accounts.

The second claim of conversion fails for a different reason. The character of the claim is best captured by the following allegation: "Defendants . . . and their agents or members, known and unknown, knowingly, intelligently and intentionally stole, misappropriated, converted, and usurped Plaintiffs' currency, name, likeness, rituals, emblems, practices, personal property, revenue, Constitution, contributions, assets, benefactor lists, and/or intellectual property for the use and benefit of Defendants." Am. Compl. ¶ 154.

This claim is devoid of facts. While the bank account conversion claim alleges some specific property (the bank accounts) that was taken, the "conversion of other personalty" claim does not identify a single tangible item. There are no examples of Defendants stealing an emblem in the Amended Complaint. Nor is there an instance of Defendants stealing a practice or ritual (or a description of any practice or ritual), and it is unlikely that these concepts could be classified as personal property in any case. Furthermore, to the extent Plaintiffs can bring claims

12

for "conversion" of their intellectual property, name, and likeness, these allegations are captured by the trademark and unfair competition claims. Therefore, the conversion claim is properly categorized as a conclusory legal allegation that cannot survive the motion to dismiss.

## IV. CONCLUSION

Plaintiffs' Amended Complain does state a claim for unfair competition, tortious interference with contract, copyright infringement and trademark infringement. Therefore, upon consideration of the motions, and finding good cause to do so, the Court hereby **DENIES** the motions to dismiss as they concern these counts. The motion is **GRANTED** with respect to the claims for fraud, conspiracy to commit fraud, and conversion. An appropriate order shall issue.

Liam O'Grady
United States District Judge

March 2, 2017
Alexandria, Virginia

13