IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED SUPREME COUNCIL, 33 DEGREE OF THE ANCIENT AND ACCEPTED SCOTTISH RITE OF FREEMASONRY, PRINCE HALL AFFILIATION, SOUTHERN JURISDICTION OF THE UNITED STATES OF AMERICA, ET AL.,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED SUPREME COUNCIL OF THE ANCIENT ACCEPTED SCOTTISH RITE FOR THE 33 DEGREE OF FREEMASONRY, SOUTHERN JURISDICTION, PRINCE HALL AFFILIATED, ET AL.,<br><br>*Defendants.* | Civil No. 1:16-cv-1103<br><br>Hon. Liam O'Grady<br>Hon. Ivan D. Davis |

## MEMORANDUM OPINION

This matter came before the Court on Defendants' Motion for Summary Judgment (Dkt. 255).[1] The Court heard oral arguments on March 9, 2018. *See* Dkt. 339. Having considered the pleadings, the oral arguments, and the evidence in the case, the Court concluded that summary judgment for Defendants was appropriate. In recognition of the pending trial date, the Court issued a short order to this effect on March 9, 2018, with a memorandum opinion to follow. *See* Dkt. 338. Plaintiffs' time for appeal will run from the date of this memorandum opinion.

---

[1] Dkt. 255 is a motion from the following Defendants: United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, Southern Jurisdiction, Prince Hall Affiliated; Ralph Slaughter; Joseph Williams; and Michael Parris. Defendant Most Worshipful Prince Hall Grand Lodge of Virginia Free and Accepted Masons and Defendant Roger Brown entered into a settlement agreement with Plaintiffs. *See* Dkt. 344.

1

## I. Background

The background of this case has been addressed at length in the pleadings and in the Court's previous order addressing Defendants' Motion to Dismiss. *See* Dkt. 71. The Court will not review matters previously addressed, but will turn directly to the issues raised by Defendants' Motion for Summary Judgment. In their motion, Defendants seek dismissal of the six counts remaining in this case: Count I (common law unfair competition); Count II (conspiracy to commit common law unfair competition); Count V (tortious interference with contract); Count VI (conspiracy to commit tortious interference with contract); Count IX (copyright infringement); and Count X (trademark infringement).[2] Defendants also challenge Plaintiffs' standing to bring these claims.

## II. Legal Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of showing the court the basis for its motion and identifying the evidence that demonstrates the absence of a genuine issue of material fact. *Id.* Once the moving party satisfies its initial burden, the opposing party has the burden of showing, by means of affidavits or other verified evidence, that there exists a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

---

[2] The Court previously dismissed Counts III, IV, VII and VIII. *See* Dkt. 71 at 8.

2

In reviewing a summary judgment motion, the court must "draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992). Summary judgment is not appropriate if the resolution of material issues depends on credibility determinations. *Meyers v. Baltimore Cty.*, 713 F.3d 723, 730 (4th Cir. 2013).

### III. Analysis

Defendants challenge Plaintiffs' claims on several grounds. The Court will first address Plaintiffs' standing, and will then consider the merits of Plaintiffs' claims of tortious interference with contract, copyright infringement, trademark infringement, unfair competition, and conspiracy.

*a. Standing*

Before this Court may exercise jurisdiction over Plaintiffs' claims, Plaintiffs must demonstrate that they have constitutional standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs must show that: (1) they have suffered an "injury in fact" to a legally protected interest and that the injury is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.*

Defendants challenge the standing of both named Plaintiffs in this case: (1) the United Supreme Council, 33 Degree of the Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, Southern Jurisdiction of the United States of America ("Plaintiff USC-SJ"); and (2) the United Supreme Council 33° of the Ancient and Accepted Scottish Rite of Freemasonry (Prince Hall Affiliation) Southern Jurisdiction U.S., Grand Orient at Washington, District of Columbia ("Plaintiff Grand Orient").

3

i. Plaintiff USC-SJ

Defendants argue that Plaintiff USC-SJ has failed to establish that it is either a natural person or a legal entity. *See* Dkt. 256 at 20. In the absence of a legal existence, Defendants argue, Plaintiff has suffered no injury in fact that can be redressed by this lawsuit. *Id.*

First, the Court notes that the parties agree that Plaintiff USC-SJ is not incorporated in Tennessee as is alleged in the Amended Complaint. *See* Dkt. 182; Dkt. 183; *see also* Dkt. 44 at ¶ 1. On October 9, 2017, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, requesting, among other things, leave to amend to "reflect that the first named Plaintiff [USC-SJ] is, and has operated as, a D.C. unincorporated non-profit social, charitable, and fraternal association." *See* Dkt. 182 at 2. Plaintiffs acknowledged that "[t]his Plaintiff was incorrectly identified as a Tennessee non-profit corporation in the First Amended Complaint." *Id.* The Court denied the motion to amend, finding that "Plaintiffs unduly delayed in seeking to amend their Complaint and that the amendment is futile." *See* Dkt. 215 at 1. Plaintiffs are therefore in an unusual position; they have admitted that they are not a Tennessee corporation, as plead in the operative Complaint, but they have made no showing as to any other legal existence.

Plaintiffs attempt to circumvent this fact by arguing that Defendants have admitted that USC-SJ is a Tennessee corporation because Defendants made a statement to that effect in their Answer. *See* Dkt. 319 at 4; *see also Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) (noting that a party is bound by the admissions of his pleadings). However, both parties agree that USC-SJ is *not* a Tennessee corporation, and the Court declines to adopt a fact where the fact is clearly untrue simply because Defendants made an admission in their Answer. *See* Dkt. 182 at 2; Dkt. 256 at 16; *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963) ("[A] court, unquestionably, has the right to relieve a party of his judicial admission if it appears that

the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission."); *Carnell Constr. Corp. v. Danville Redevelopment & Houing Authority*, No. 4:10-cv-00007, 2012 WL 178341, at *13 (W.D. Va. Jan. 23, 2012) (noting that even if a statement qualifies as a judicial admission, it is "not necessarily binding," because "considerations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases").

Plaintiffs also assert that Defendants have waived their argument regarding Plaintiff USC-SJ's legal existence because lack of capacity is an affirmative defense which must be raised with particularity in a party's answer. *See* Dkt. 319 at 3; Fed. R. Civ. P. 9(a); *see also Definitive Res., Inc. v. United States*, No. DKC 2005-3233, 2006 WL 3423854, at *2 (D. Md. Nov. 28, 2006) ("When a party wishes to challenge the legal existence of any party or the capacity of any party to sue or be sued for jurisdictional purposes, it shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.").

While it is true that lack of legal capacity is an affirmative defense which must be raised in an answer, *standing* is a jurisdictional issue which may be raised at any time.[3] *See ChinaCast Edu. Corp. v. Chen Zhou Gou*, No. 15-05475, 2016 WL 10653269, at *2 (C.D. Cal. Jan. 8, 2016) (finding that questions regarding a plaintiff's legal existence raise "the fundamental standing question of whether the Court can redress any of Plaintiff's alleged injuries if Plaintiff no longer legally exists"); *Northpoint Tech., Ltd. v. Directv, Inc.*, No. 1-09-cv-506, 2010 WL 11444098, at *2 (W.D. Tex. Oct. 25, 2010) ("A question as to legal existence is a question of standing.").

---

[3] There is a difference between the *capacity* to sue, which is the right to come into court, and the *standing* to sue, which is the right to relief in court. *Washington Mut. Bank v. Blechman*, 157 Cal. App. 4th 662, 669 (2007).

Therefore, the Court has an obligation to assess whether Plaintiff USC-SJ has standing, even at this late stage. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (finding that courts lack subject matter jurisdiction where a plaintiff lacks standing).

Here, Defendants assert that Plaintiff USC-SJ has failed to establish that it is a legal entity of any kind. *See* Dkt. 256 at 20. The Court agrees. Plaintiff USC-SJ is indisputably not a Tennessee corporation. Plaintiff USC-SJ has not made any showing that it is a D.C. unincorporated association. If Plaintiff USC-SJ has failed to establish a legal existence, it can have no stake in the outcome of this case. *Northpoint Tech.*, 2010 WL 11444098, at *2; *see also Levy v Am. Med. Collections Bureau*, 2016 WL 5462722, at *2 (E.D. Va. Sept. 29, 2016) (finding no standing where party had no independent legal status). Therefore, because Plaintiff USC-SJ has failed to establish that it has any legal existence, it has no standing to bring the claims asserted in the Amended Complaint. *See Benn v. Seventh-Day Adventist Church*, 304 F. Supp. 2d 716, 721-22 (D. Md. 2004).

ii. <u>Plaintiff Grand Orient</u>

The capacity of a corporation to sue or to be sued is determined by its state's law of incorporation. *See United States v. Moore*, 698 F. Supp. 622, 624 (E.D. Va. 1988). Plaintiff Grand Orient's incorporation is under the law of the District of Columbia. Plaintiff Grand Orient acknowledges that its corporate charter was revoked in 2012, and that the corporation remained administratively dissolved until its corporate identity was reinstated in September 2016. *See* Dkt. 257, Ex. 33; Dkt. 319 at 6. This litigation commenced on August 29, 2016. *See* Dkt. 1.

Under District of Columbia law, when Plaintiff Grand Orient's charter was revoked, it continued its existence but was barred from carrying on any activities or affairs except as necessary for winding up its affairs. *See* D.C. Code Ann. § 29-106.02(c). Dissolution does not

6

prevent commencement of a proceeding by or against the corporation in its corporate name. *See* D.C. Code §§ 29-412.05(b)(4) ("Dissolution of a nonprofit corporation shall not . . .Prevent commencement of a proceeding by or against the corporation in its corporate name."); *see also* Dkt. 319 at 8. And, "[w]hen reinstatement . . . is effective, it shall relate back to, and be effective, as of the effective date of the administrative dissolution." *See* D.C. Code Ann. § 29-106.03. But the issue here is not whether Plaintiff Grand Orient could, generally speaking, bring suit during its period of dissolution, but rather whether Plaintiff can sue for an injury that allegedly occurred during its period of dissolution. It cannot.

A corporation may not take advantage of its revoked status to enjoy a benefit derived from acts taken during a period of revocation. *See Bourbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 84-86 (D.D.C. 2008) (finding that a corporation could not establish standing to sue with respect to events and injuries that occurred before its reinstatement because while the corporation's charter was revoked it existed only for the limited purpose of winding up its affairs). During its period of dissolution, a corporation is "shorn of all its powers and rights, save for those expressly reserved by the statute for the purpose of winding up its affairs (i.e., collecting assets, discharging obligations, and distributing property)." *See Accurate Constr. Co. v. Washington*, 378 A.2d 681, 684 (D.C. 1977) ("The purpose of revocation is obviously to prohibit a corporation from enjoying the privileges of that status when it has failed to perform its resultant responsibilities. Revocation is a disability imposed on a corporation as a penalty. It would deprive the statute of its force and encourage a corporation to default on paying its taxes and fees and filing its annual reports if by subsequent compliance such a corporation could at its convenience completely erase the effects of the penalty.").

Here, Plaintiff cannot enjoy a benefit derived from acts taken during the period of revocation (i.e., registering a trademark and entering into membership contracts). The plain language of the D.C. code supports this reading:

> When reinstatement under this section is effective, it shall relate back to, and be effective, as of the effective date of the administrative dissolution, and the domestic filing entity shall resume carrying on its activities and affairs as if the administrative dissolution had never occurred, *except for the rights of a person arising out of an act or omission in reliance on the dissolution before the person knew or had reason to know of the reinstatement.*

D.C. Code § 29-106.03(d) (emphasis added). As explained above, Defendant United Supreme Council incorporated under the laws of the District of Columbia on October 14, 2015. *See* Dkt. 256 at 4 (citing Ex. 5, Certificate of Incorporation). Plaintiff Grand Orient was not an active corporation in the District of Columbia at that time. *See* Dkt. 256 at 16. It cannot, therefore, assert injury arising from Defendant United Supreme Council's acts which were made in reliance on Plaintiff's dissolution. *See* Dkt. 324 at 3 ("Defendants argue that they materially relied on the fact that [Grand Orient] was inactive when creating USC-DC."). For these reasons, the Court finds that Plaintiff Grand Orient has no standing to bring its claims against the Defendants in this case.

Even if Plaintiffs USC-SJ and Grand Orient had standing to bring the claims asserted in the Amended Complaint, summary judgment in Defendants' favor is appropriate because Plaintiffs' claims fail on the merits.

### b. *Tortious Interference with Contract (Count V)*

To establish tortious interference with contractual relations, a claimant must: (1) demonstrate the existence of a valid contractual relationship or business expectancy; (2) prove knowledge of the relationship or expectancy by the interferor; (3) show intentional interference

inducing or causing a breach of the relationship; and (4) show that it suffered damages from the interference. *See Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001).

Here, Plaintiffs fail the first prong. They have not demonstrated an enforceable contract. Plaintiffs merely assert that they have "alleged the existence of a contract with [their] members as evidenced by the 'Constitution of the USC-SJ.'" Dkt. 319 at 18. Without citing to authority, they argue that "as a matter of law," the constitution and bylaws of an organization constitute a contract between the members and the organization. *See id.* Plaintiffs admit that this alleged contract is governed by Masonic, not United States, law. *See* Dkt. 256, Ex. 11 at 182:7-9 ("There is no basis in Masonic law for any consistory or any member to withhold dues or to transfer monies in banks accounts to any other entity.").

Even if the Court were willing to enforce Plaintiffs' interpretation of Masonic law, Plaintiffs have not demonstrated that they had a reasonable probability of a continuing business relationship with any of the members who left the organization to join Defendants' organization. Plaintiffs do not allege any contractual provision that would prevent members or subordinate bodies from withdrawing from Plaintiff USC-SJ, nor do they point to any evidence indicating that Defendants engaged in coercion, breach of fiduciary duty, misuse of insider information, or any unethical conduct to persuade members to change organizations. *See* Dkt. 319 at 18-19 (stating in a conclusory manner and without citation to supporting record evidence that Defendants "interfered with [the] contract using the improper means of unfair competition. Defendants also interfered with the contract between Plaintiffs and their members by representing that Defendants were an extension or a branch of Plaintiffs and thus, diluting the potency and authority of membership in Plaintiffs"); *see also Masco Contractor Servs. E., Inc. v.*

*Beals*, 279 F. Supp. 2d 699, 710 (E.D. Va. 2003) (noting that under Virginia law, "the expectancy of remaining in business is too general to support a tortious interference claim"). Moreover, the Court declines to enforce Plaintiffs' purported contractual right to maintain control and membership of individual Masons, due to the serious First Amendment implications of same.

For these reasons, the Court grants summary judgment on Count V.

c. *Copyright Infringement (Count IX)*

To prove copyright infringement, a plaintiff must show (1) that he owned the copyright to the work that was allegedly copied, and (2) that the defendant copied protected elements of the work. *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 353 (4th Cir. 2001). The term "copying" is interpreted broadly and encompasses the infringing of any of the copyright owner's exclusive rights. *See U-Haul Int'l, Inc. v. Whenu.com, Inc.*, 279 F. Supp. 2d 723, 729 (E.D. Va. 2003); 17 U.S.C. § 106.

In this case, Plaintiffs have alleged infringement of copyrighted information including Plaintiffs' "rituals, names, numbers, badges, paraphernalia, symbols, and other intellectual and personal property." But the only material which is actually subject to copyright is U.S. Copyright Registration No. TX0008-210-759, effective date November 16, 2015, respecting their Constitution and General Regulations of the United Supreme Council, 33 Degree Ancient & Accepted Scottish Rite of Freemasonry, PHA, SJ, USA, Inc.[4] Regarding this constitution, Plaintiffs have failed to demonstrate that Defendants have infringed on any of Plaintiffs'

---

[4] Defendants contend that the rituals of Scottish Rite Masonry are generic and available on the open market. *See* Dkt. 256, Ex. 1 at 46:4-9; Ex. 22. Plaintiffs do not directly address this assertion, but claim that the rituals "belong to the four Supreme Councils through an agreement." *See* Dkt. 320 at ¶ 39 (citing Dkt. 320, Ex. 31 at 183:9-22, 184:1-5). This fact is therefore admitted for the purposes of summary judgment. Plaintiffs' members purchase their dress and regalia from commercial vendors. *See* Dkt. 256, Ex. 6 at 160:17-162:3. Once a member purchases regalia, it is his private property. *See id.*, Ex. 6 at 167:19-168:8; Ex. 9 at 64:22-65:7. Plaintiffs do not dispute this fact. *See* Dkt. 320 at 17 ¶ 41. This fact is therefore admitted for the purposes of summary judgment.

exclusive rights. Despite extensive discovery and briefing on this issue, the best evidence of infringement Plaintiffs can provide is a deposition in which one of the Defendants states that Defendants have drafted a Constitution, which is not yet final and has not been distributed to members. *See* Dkt. 256 at 15 ¶ 42; Dkt. 320, Ex. 25 at 256:5-18. Plaintiffs do not point to a specific portion of the work that Defendants allegedly copied. Indeed, Plaintiffs completely fail to address the copyright infringement issue in their Opposition. *See generally* Dkt. 319. Failure to respond to an argument made in a dispositive pleading results in a concession of that claim. *See E.W., LLC v. Rahman*, 873 F. Supp. 2d 271, 728 (E.D. Va. 2012) (citing *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08-cv-00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010)) (collecting cases).

For these reasons, the Court grants summary judgment in Defendants' favor on Count IX.

### d. Trademark Infringement (Count X)

#### i. Lanham Act Section 32

Plaintiffs have no standing to bring a claim under 15 U.S.C. § 1114. Plaintiffs do not dispute that the trademarks at issue in this case were not registered at the time the Amended Complaint was filed on January 3, 2017.[5] The trademark for Application No. 86841790 ("United Supreme Council Ancient & Accepted Scottish Rite of Freemasonry Prince Hall Affiliation Southern Jurisdiction") was registered on February 14, 2017. *See* Dkt. 256, Ex. 41.

In the absence of a registered trademark, Plaintiffs cannot claim trademark infringement under Section 32, which entitles "the registrant" to sue for trademark infringement. *See* 15 U.S.C. § 1114; *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 25 (D.D.C.

---

[5] Plaintiffs write, "Plaintiffs deny vehemently that the trademark in question is not registered, or that it is not the rightful owner." *See* Dkt. 319 at 9. However, the question is not whether the trademark in question is registered *now*, but rather whether it was registered *at the time the Amended Complaint was filed*. Plaintiffs do not address this issue. *See generally* Dkt. 319.

2006) ("Absent a complete and successful registration, C & C is not a 'registrant' under the parameters of Section 32(1) and cannot bring a claim pursuant to that section at this time."); *Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 87 (D. Mass. 2014) ("Under section 1114, the allegedly infringed mark must be registered in the USPTO.").

Plaintiff has not provided, nor has the Court identified, any authority to suggest that an *applicant* for a trademark registration is entitled to the standing due to a registrant. Nor is the Court aware of any support for the proposition that a standing deficiency can be cured by the subsequent registration of a trademark *during* a lawsuit. The general rule is that standing is determined from the circumstances at the time the suit is filed. *See Lujan*, 504 U.S. at 561 n.5 ("Standing is to be determined as of the commencement of the suit."). Plaintiffs have not pointed to any authority outlining exceptions to this general rule in this context. Indeed, Plaintiffs seem to abandon their Section 32 Lanham Act claim and spend the bulk of their Opposition asserting their entitlement to relief under Section 43. *See* Dkt. 319 at 9-11. As explained below, this argument is also unavailing.

### ii. Lanham Act Section 43

To show a violation of Section 43 of the Lanham Act, a plaintiff must demonstrate that it has a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *Lone Star Steakhouse & Saloon, Inc., v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). The Fourth Circuit has noted that "[t]he test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved." *Id.* at 940 n.10.

Here, Plaintiffs attempt to characterize Count I of the Amended Complaint, which alleges unfair competition under Virginia common law, as a Section 43 Lanham Act claim. *See* Dkt. 319 at 10. Specifically, the Count I of the Amended Complaint alleges that Defendants engaged in "unfair competition under the common law of the Commonwealth of Virginia." Dkt. 44 at ¶ 69. In their Opposition to Defendants' Motion for Summary Judgment, Plaintiffs argue that they have "plead infringement as a cause of action both specifically and broadly enough to include any violations of Section 43(a), in addition to Section 32(1)." Dkt. 319 at 10.

This belated recasting of the Amended Complaint must fail. Plaintiffs only cite two sentences in support of this argument: "Defendants . . . have falsely represented that they are the true, genuine, and authentic 33rd Degree Scottish Rite Freemasonry, Prince Hall Affiliated, organization governing Plaintiffs' exclusive territorial 'Southern Jurisdiction,' or a legitimate branch of Plaintiffs" and "[a]s a result of Defendant's unauthorized use of trademarks that are identical to and/or confusingly similar to Plaintiffs' Registered Marks, the public is likely to believe that Defendant's goods or services are approved by or affiliated with Plaintiffs." *See id* (citing to Amended Complaint, Dkt. 44 at ¶¶ 66, 185). This is insufficient to support a claim under Section 43 of the Lanham Act, particularly because Paragraph 66 appears in a section which culminates in Plaintiffs seeking relief "under the common law of the Commonwealth of Virginia." *See* Dkt. 44 at ¶ 69.

For these reasons, the Court grants summary judgment in Defendants' favor on Count X.

   e. *Unfair Competition Under Virginia Common Law (Count I)*

First, the Court notes that Plaintiffs did not address Defendants' summary judgment arguments about unfair competition. *See generally* Dkt. 319. As explained above, failure to

respond to an argument made in a dispositive pleading results in a concession of that claim. *See Rahman*, 873 F. Supp. 2d at 728. Even on the merits, Plaintiffs' unfair competition claim fails.

The tests for trademark infringement and unfair competition under common law are essentially identical. *See Nationstar Mortgage, LLC v. Ahmad*, 155 F. Supp. 3d 585, 592 (E.D. Va. 2015). To prevail on a claim of unfair competition, therefore, a plaintiff must show that: (1) it possesses a mark; (2) the defendants used the mark in commerce; (3) the defendants used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) the defendants used the mark in a manner likely to confuse consumers. *See Lamparello v. Falwell*, 420 F.3d 309, 312 (4th Cir. 2005). The Court finds that Plaintiffs' claim of unfair competition fails because they have not shown a likelihood of confusion.

When analyzing whether there is a likelihood of confusion, courts have considered the following factors: (1) the strength or distinctiveness of the Plaintiffs' mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the Defendants' intent; (7) actual confusion; (8) the quality of Defendants' product; and (9) the sophistication of the consuming public. *See Select Auto Imports Inc. v. Yates Select Auto Sales, LLC*, 195 F. Supp. 3d 818, 831 (E.D. Va. 2016). No single factor is dispositive, and the factors are not of equal importance or relevance in every case. *See Diane Von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356, 2007 WL 2688184, at *3 (E.D. Va. Sept. 10, 2007).

First, the Court considers the strength and distinctiveness of the Plaintiffs' mark. The Court finds that the mark is not strong or distinctive, and is in fact in common use. The terms "United Supreme Council Ancient Accepted Scottish Rite" are used by many organizations both

domestically and internationally. *See* Dkt. 256, Ex. 1 at 154:20-155:1-8; 156:18-20; Ex. 27; Ex. 28. Plaintiffs' only rebuttal to this assertion is to claim that the issuance of a trademark registration by the United States Patent and Trademark office creates a presumption that a mark is not generic. *See* Dkt. 320 at 19 ¶ 51.

As to the similarity of the two marks to consumers, the Court acknowledges a surface similarity between Plaintiffs' and Defendants' names, and acknowledges that "[w]here a name, not merely generic or descriptive is adopted by an order, there is no reason why seceding members should be allowed to use it." *Grand Lodge Improved, Benevolent, Protective Order of Elks of the World v. Eureka Lodge No. 5, Independent Elks*, 114 F.2d 46, 48 (4th Cir. 1940). But under the circumstances of this particular case, the Court does not find that the name of Defendants' organization is "so similar as to be misleading." *See Grand Lodge of Improved, Benevolent and Protective Order of Elks of the World v. Grand Lodge, Improved, Benevolent and Protective Order of Elks of the World, Inc.*, 50 F.2d 860, 862 (4th Cir. 1931). The record does not reflect that Defendants chose their name "advisedly and with the purpose of leading the general public, and the persons with whom it was likely to be associated . . . to believe that it stood as" representative of Plaintiffs' organization. *See id.* at 864. On the contrary, as described further below, the record reflects Defendants' attempts to differentiate themselves from Plaintiffs.

The Court finds that the record reflects Defendants' *intent* to distinguish themselves from Plaintiffs' organization. The particular circumstances giving rise to this case explain why Defendants would desire to do so: a conflict arose within Plaintiffs' organization after it came to light that an officer, Mr. Vaughn, was allegedly misappropriating funds. Defendants' members, unhappy with how the situation was handled, thus departed from Plaintiffs' organization. *See*

Dkt. 256 at 5. It is unsurprising, therefore, that Defendants would want to *avoid* any confusion between themselves and Plaintiffs. Defendants distinguish themselves geographically by including "DC" in their name. Their intent to separate themselves from Plaintiffs is further reflected on Defendants' website. *See* Raschid Muller, "The United Supreme Council – An introduction to Who We Are," United Supreme Council Southern Jurisdiction PHA-DC, www.uscsjpha-dc.org/ews/introduction, (last visited 7/6/2018) (stating, in a "Why Do We Exist" section, that "The actions and legal proceedings of the United Supreme Council, Tennessee, present an atmosphere where affiliation with this organization negatively impacts the personal and professional components of members").

Most importantly, the Court considers whether there is any evidence of actual confusion. *See George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009). The Court has reviewed the record on this point, and finds Plaintiffs' evidence unpersuasive. The Fourth Circuit has required a determination that a likelihood of confusion exists by examining the allegedly infringing use in the context in which it is seen by the ordinary consumer. *See Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 245 (4th Cir. 2007); *Valador, Inc. v. HTC Corp.*, 241 F. Supp. 3d 650, 669 (E.D. Va. 2017) (rejecting evidence of confusion from a "plaintiff-insider"). Additionally, in evaluating actual confusion, "[r]elevant confusion is that which affects the purchasing and selling of the goods or services in question . . . Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F. Supp. 2d 454, 464 (D. Md. 2002), *aff'd*, 91 F. App'x 880 (4th Cir. 2004). But Plaintiffs have offered the depositions of individuals who are not members of the consuming public, as well as allegations of confusion by non-consumers such as a Wells Fargo Bank employee. *See* Dkt. 319 at 16

(offering as examples of confusion the depositions of Wells Fargo employee Adrian Shears, and members of Plaintiffs' organization such as Shelton Riddick).

Moreover, courts have dismissed evidence of only a small number of instances of actual confusion as *de minimis*. *See George*, 575 F.3d at 398. Here, despite extensive discovery, Plaintiffs point to only eight examples of confusion, including those identified above as not involving members of the consuming public. *See* Dkt. 319 at 16. Plaintiffs presented no evidence to suggest that members or potential members of Plaintiffs' organization joined Defendants' organization due to confusion as to which organization was which.[6] *See Most Worshipful Grand Lodge of A.F. & A.M. of West Virginia v. Most Worshipful Prince Hall Grand Lodge of West Virginia, A.F. & A.M*, 111 S.E. 309, 310 (W.Va. 1922) (finding, under similar factual circumstances, that "the evidence utterly fails to show any deception or fraud practiced upon the plaintiff, and the only injury that it has suffered . . . has resulted from the withdrawal of a large number of its members because of dissatisfaction with its practices").

Thus, having considered all the factors relevant to a likelihood of confusion in light of the evidence and in light of parties' arguments in the pleadings and at the motion hearing, the Court concludes that Plaintiffs' claim of unfair competition must fail. *See Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Academy Alumni Ass'n*, No. DKC 13-1128, 2014 WL 857947 (D. Md. Mar. 4, 2014) (noting that in such cases, the trial judge may draw on his own experience to make an informed judgment as to likelihood of confusion).

For these reasons, and for good cause shown, the Court therefore grants summary judgment in Defendants' favor on Count I.

---

[6] On the contrary, it appears that the individuals who joined Defendants' organization did so *because* they understood the difference between Plaintiffs and Defendants, and because they wished to separate themselves from what they perceived as a criminal (or, at least, unethical) culture within Plaintiffs' leadership. Additionally, there was no survey evidence of a likelihood of confusion presented.

17

*f. Conspiracy (Counts II and VI)*

Without an underlying tort, there can be no cause of action for a conspiracy to commit the tort. *See McDonald's Corp. v. Turner-James*, No. 05-804, 2005 WL 7873649, at * 6 (E.D. Va. Nov. 29, 2005). Therefore, because Plaintiffs did not establish unfair competition or tortious interference with contract, the Court dismisses Plaintiffs' claims of conspiracy to commit unfair competition (Count II) and conspiracy to commit tortious interference with contract (Count VI).

**IV. Conclusion**

For these reasons, and for good cause shown, the Court grants summary judgment in Defendants' favor. *See* Dkt. 338.

July 16 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge